UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY DAMIANI AND DAWNMARIE DAMIANI, Plaintiffs, v. WELLS FARGO, at al Defendants. | Civil Action No.: 16-cv-8484 (PGS) MEMORANDUM AND ORDER |

SHERIDAN, U.S.D.J.

This matter is before the Court on a motion to dismiss Plaintiffs' Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), filed by Defendant Wells Fargo. [ECF No. 14].

## FACTS AND PROCEDURAL HISTORY

On March 26, 2007, Anthony Damiani ("Mr. Damiani") entered into a $420,000.00 fixed rate mortgage mote with World Saving Bank, FSB. (ECF No. 14-4, Bender Cert., Ex. 2). On that same date, Mr. Damiani, Dawnmarie Damiani and Peter Damiani entered into a mortgage with World Savings Bank, FSB, its successors and assigns, against Plaintiffs' property located in Jackson, New Jersey (the Property). (ECF No. 14-5, Bender Cert., Ex. 3). Wells Fargo Bank, NA is the successor by merger with Wachovia Mortgage, FSB, which had previously merged with World Savings Bank, FSB. (ECF No. 14-10, Bender Cert., Ex. 8). Plaintiffs modified their loan in 2009. (Id.)

In 2011, Mr. Damiani was laid off from work, and as a result, Plaintiffs endured financial difficulties. (ECF No. 12, Amend. Compl. ¶ 10). Additionally, at about the same time, Mrs.

1

Damiani was diagnosed with a medical condition similar to Parkinson's disease, and their son developed a heart condition. (Id., ¶ 11).

Plaintiffs allege that they proactively contacted Wells Fargo to determine if some relief was available because the loss of the job together with the additional health care costs made timely future payments unlikely. Wells Fargo advised that it does not provide such assistance to mortgagors who are presently current on their mortgage payments. (Id., ¶ 12). Plaintiffs eventually stopped payments and defaulted on the note and mortgage on April 1, 2011. (ECF No. 11-1).

On July 7, 2011, Plaintiffs contacted Kevin Quinn at Claremont Funding Loan Modification Service in order to modify their loan to a more manageable amount. Quinn allegedly fraudulently advised the Damianis that the loan modification process had been initiated after the Plaintiffs paid a $2,000.00 fee to Claremont, and submitted paperwork including pay stubs, bank statements, and tax returns among other items. (Id. ¶ 14- ¶ 16). In September 2011, Quinn fraudulently informed Plaintiffs that they had been approved for the loan modification. (Id. ¶ 17). However, in October, 2011, Quinn again requested Plaintiffs' 2009 tax returns, and when Mrs. Damiani asked why, he stated that some documents had been lost. (Id. ¶ 18). After October 2011, there was little communication between Claremont and Plaintiffs. (Id. ¶ 19). The loan modification never occurred.

On October 10, 2012, Defendant Wells Fargo, initiated a foreclosure action against Plaintiffs because the note and mortgage were in default. (Id. ¶ 20). Plaintiffs allege that they were told by Quinn, who was allegedly acting as their attorney, not to file any documents in the foreclosure action; however, neither Quinn nor any other party at Claremont ever filed a response. (Id. ¶ 21). On July 15, 2013, a Final Judgment was entered against Plaintiff for failure to answer

or otherwise appear in the action. (*Id.* ¶ 22, ECF No. 14-8, Final Judgment Dkt. No. F 022661 12, Ex. 6).

Following the foreclosure action, in September 2013, the sheriff's office posted a sign on Plaintiffs' door announcing a sheriff's sale of the property on October 22, 2013. (*Id.* ¶ 23). Around September 14, 2013, the Damianis advised Quinn about the sheriff's sale notice. (*Id.* ¶ 26). In response, Quinn told the Damianis that they "needed to relax and that they will not lose their home." (*Id.* ¶ 27). Quinn also informed them that their file was being reassigned to a new company named the "Templeton Firm". (*Id.* ¶ 28). The Templeton Firm never took any action. (*Id.* ¶¶ 29-30)[1].

In October, 2013, Plaintiffs contacted the Keaveney Legal Group for representation in the foreclosure matter. (*Id.* ¶ 33). Counsel entered their appearance and filed a motion to vacate the final judgment on November 1, 2013. (*Id.* ¶ 34). The motion to vacate was never heard and eventually withdrawn. (ECF No. 1, Compl. ¶ 37). The Keaveney Legal Group attempted to negotiate a loan modification with Wells Fargo, but it was denied due to the pending sheriff's sale. (*Id.* ¶ 35). Plaintiffs then filed a series of Chapter 13 bankruptcy petitions – the first on November 25, 2013, then again on April 28, 2014, a third on April 8, 2015 and a final petition was filed on May 10, 2016 - none of the petitions resulted in a discharge. (ECF 11-10, Bender Cert., Ex. 8 at 3, 7). In the 2015 bankruptcy proceeding, Plaintiffs sought loss mitigation on the mortgage, which was opposed by Wells Fargo and the motion was denied by the court. (ECF No. 14-1, Def. Memo at 3). Throughout the bankruptcy proceedings, the sheriff's sales were stayed each time a new

---

[1] Both Quinn and Claremont Funding Loan Modification Service are listed as Defendants in this action, however they have not filed appearances. At oral argument for the motion to dismiss, counsel explained that Mr. Quinn is incarcerated, and could not be served with the Complaint. It is unclear whether he is currently incarcerated.

bankruptcy petition was filed and then rescheduled when those petitions were dismissed. (ECF No. 14-10, Bender Cert., Ex. 8 at 3, 7).

In January 2016, Keaveney Legal Group substituted out of the case and the attorney who now represents the Damianis began his representation. (*Id.* ¶ 39). On January 11, 2016, negotiations were initiated again by Plaintiff for a potential forbearance agreement and/or a loan modification with Wells Fargo. (*Id.* ¶ 42; ECF No. 14-10, Ex. 8). Wells Fargo refused to negotiate. (*Id.* ¶ 48).

On or about March 1, 2016, Plaintiffs reached out to Wells Fargo independently of Defendant's counsel. Through this effort, Wells Fargo employees sent a reinstatement amount to Plaintiffs (*Id.* ¶¶ 49-50). A reinstatement amount had to be paid within about two weeks. (*Id.* ¶ 51, Exhibit A).

On March 14, 2016, the state Court heard an Order to Show Cause why the Sheriff's sale should not be enjoined. (ECF No. 11-10, Ex. 8). Thereafter a stay was granted until May 10, 2016. In the interim period, negotiations between Plaintiffs and Wells Fargo continued; but on April 13, 2016, Defendant's counsel advised Plaintiffs' attorney that Plaintiffs "were ineligible for any loan modification because their loan had been delinquent for more than a year." (ECF No. 14-1, Def. Memo. at 24-25)[2]. The property was sold to a third party on September 13, 2016 subject to approval of the state Court. (Certif. of Bender Ex. 7).

Plaintiffs allege in the Complaint that they made payments to Wells Fargo throughout the foreclosure and bankruptcy process in order to qualify for a forbearance agreement to which the bank allegedly agreed during a telephone conversation on May 17, 2016. (*Id.* ¶ 70). A written copy of the agreement was never received by the Plaintiffs from Wells Fargo as promised,

---

[2] There is no mention of this communication in Plaintiffs' Complaint. Plaintiffs allege their loan modification was never denied by Defendant. (ECF No. 1, Compl. ¶ 74).

4

however, Mr. and Mrs. Damiani continued to make payments. (*Id.* ¶ 71). Wells Fargo sent receipt of payment, but the letters received by Plaintiffs allegedly misapplied the amounts. (*Id.* ¶ 72). On July 21, 2016, Plaintiffs received their check back from Wells Fargo stating it could not accept a payment less than the full restatement amount, however, Plaintiffs allege that Wells Fargo still withdrew the funds out of an account for a following payment. (*Id.* ¶ 77). Plaintiffs last received communication from Defendant Wells Fargo when they received an offer to modify their payments on September 22, 2016, though the notice was dated September 9, 2016. (*Id.* ¶ 80; Exhibit E).

On October 10, 2012, Defendant filed an action for foreclosure in Superior Court of New Jersey, Chancery Division. (Def. Br. Ex. 6). During the course of the litigation, on January 4, 2017, Plaintiffs filed a motion to set aside the foreclosure sale. In the motion, Plaintiffs raised the following issues:

- The court should set aside the Sheriff sale because Plaintiffs were actively negotiating a loan modification in accordance with Regulation X of RESPA, and Regulation X prevents such foreclosure sales .
- The Court should overturn the Foreclosure sale because Wells Fargo had an obligation under RESPA to negotiate loan modifications, and a foreclosure sale stayed during that time period.
- Wells Fargo lacked proper standing therefore the court should vacate the sale

On January 20, 2017, the judge in the state foreclosure action denied Plaintiffs' January 4, 2017[3] motion to set aside the Sheriff's sale on its merit, placing its reasons on the record. (Def. Br. Ex. 15).[4] On November 13, 2016, Plaintiffs initiated this lawsuit alleging the following claims [ECF No. 1]:

- **COUNT ONE** : WELLS FARGO VIOLATED RESPA RE: LOAN MODIFICATION

---

[3] The filing is dated to December 2, 2016, however the stamp date on top of the document indicates that it was filed on January 4, 2017.
[4] A copy of the record was not provided. Defendant states that the motion was denied on its merit but no reasons are indicated on the order. On January 22, 2018, at oral argument on the motion to dismiss, Plaintiffs mentioned, for the first time, that the motion was denied because the court deemed the claims raised not to be germane.

5

Under Regulation X 12 CFR 1024.41(g)
- **COUNT TWO** : WELLS FARGO VIOLATED RESPA RE: FORECLOSURE SALE
- **COUNT THREE** : WELLS FARGO UNJUST ENRICHMENT
- **COUNT FOUR**: KEVIN QUINN AND CLAREMONT FUNDING LOAN MODIFICATION SERVICES A/K/A TEMPLETON FIRM UNJUST ENRICHMENT

Plaintiffs named three Defendants in the original complaint: Wells Fargo, Kevin Quinn, and Claremont a/k/a Templeton Firm. On October 10, 2017 Defendant Wells Fargo filed a motion to dismiss. [ECF No. 11]. Before the motion could be heard, Plaintiffs filed an Amended Complaint, without seeking leave of court. [ECF No. 12]. Plaintiff raised additional claims:

- **COUNT FIVE:** STRATEGIC EQUITY SOLUTIONS FRAUD
- **COUNT SIX:** WELLS FARGO VIOLATION OF THE FCRA
- **COUNT SEVEN:** WELLS FARGO DEFAMATION
- **COUNT EIGHT:** WELLS FARGO VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
- **COUNT NINE:** WELLS FARGO BREACH OF CONTRACT

Plaintiffs sued an additional Defendant, Strategic Equity Solutions, the company who purchased Plaintiffs' property at the sheriff sale. Defendant Wells Fargo then filed a second motion to dismiss Plaintiff's amended complaint on December 4, 2017, currently pending as this motion [ECF No. 14]. Wells Fargo is the only defendant to appear in this case[5].

Wells Fargo argues that the matters raised here are similar to those in the state court. As such, the Rooker-Feldman doctrine, res adjudicata and the entire controversy doctrine bar the action. Since these principles involve whether the Plaintiff has standing to sue.

## **LEGAL STANDARD**

### **Jurisdiction Motion to Dismiss: Rule 12(b)(1)**

Pursuant to the Federal Rules of Civil Procedure, Rule 12(b)(1), a claim can be dismissed for "lack of jurisdiction over the subject matter." This motion to dismiss may be asserted at any

---

[5] The docket shows attempted, but failed service of the initial complaint to Kevin Quinn. (ECF No. 7). It is unclear whether Strategic Equity Services has been served at this time.

time in a case. *In re Kaiser Group Int"l, Inc.*, 399 F.3d 558, 565 (3d Cir. 2005). In a motion to dismiss based on subject matter jurisdiction, "the standard . . . is much more demanding [than the standard under 12(b)(6)]. "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). Since the defendant's attack is facial, the court will take all allegations in the complaint as true and may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction." *Liu v. Gonzales*, 2007 U.S. Dist. LEXIS 74611, at *7 (D.N.J. Oct. 5, 2007).

### Res Judicata and Entire Controversy Doctrine

This Court begins its analysis from the Doctrine of Res Judicata and the Entire Controversy Doctrine. A federal court is required to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged. "Thus, to determine whether [] preclusion is a necessary consequence of prior state court litigation, a court must look to the law of the state adjudicating the prior action." *Coppolino v. Total Call Intern.*, Inc., 588 F. Supp. 2d 594, 599 (D.N.J. 2008) (further citation and internal quotations omitted).

> The doctrine of res judicata bars not only claims that were brought in a previous action, but also claims that could have been brought. It protects litigants from the burden of relitigating an identical issue with the same party or his privity and promotes judicial economy by preventing needless litigation. Both New Jersey and federal law apply res judicata or claim preclusion when three circumstances are present: (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action.

*In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008) (further citation and internal quotations omitted).

"New Jersey's entire controversy doctrine, 'compels the parties, when possible, to bring all claims relevant to the underlying controversy in one legal action,' including defenses and counterclaims . . . . It does so by barring parties from raising, in a subsequent proceeding, any claims it knew, or should have known about, during a prior proceeding...The doctrine does not bar claims that "accrued after the pendency of the original action." *Napoli v. HSBC Mortg. Servs.*, 2012 U.S. Dist. LEXIS 121204, *8-10, (D.N.J. 2012) (internal citations omitted).

The entire controversy doctrine applies to foreclosure actions, but is "narrower" in this context, requiring only "germane" counterclaims to be joined. N.J. Ct. R. 4:64-5; *Coleman v. Chase Home Fin., LLC ex rel. Chase Manhattan Mortg. Corp.*, 446 F. App'x 469, 472 (3d Cir. 2011); *see also In re Mullarkey*, 536 F.3d 215, 229 (3d Cir. 2008) (holding that the doctrine applies to foreclosure proceedings). Germane counterclaims are those that "arise out of the mortgage that is the basis of the foreclosure action" (Coleman, 446 F. App'x at 472) and include claims relating to "payment and discharge, [and] incorrect computation of the amounts due." *LaSalle Nat'l Bank v. Johnson*, 2006 WL 551563, at *2 (N.J. Super. Ct. Ch. Div. Mar. 3 2006).

In this case, all claims raised appear to be related to the mortgage that was at the basis of the foreclosure action.

### a. <u>Rooker-Feldman Doctrine</u>

Pursuant to the *Rooker-Feldman* Doctrine, federal district courts are barred from hearing cases "that are essentially appeals from state-court judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010). "The Third Circuit has explicitly held that federal courts are barred by the *Rooker-Feldman* doctrine from providing relief that would overturn a state court foreclosure decision." *Perez v. Seterus, Inc.*, 2017 U.S. Dist. LEXIS 190217, *5-6 (D.N.J. Nov. 16, 2017); *See, e.g., Gage v. Wells Fargo Bank*, NA AS, 521 F. App'x 49, 51

(3d Cir. 2013); *Manu v. Nat'l City Bank of Ind.*, 471 F. App'x 101, 105 (3d Cir. 2012).

The *Rooker-Felman* doctrine requires meeting four elements, "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Mineral Co*, 615 F.3d at 166 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005)).

Here, the first and the third prong have been met. Plaintiffs lost in state court where a judgment of foreclosure was issued. Plaintiffs filed this claim after the foreclosure judgment was issued.

As to the second and fourth prong, Plaintiffs allege injuries that derived from Wells Fargo's purported unlawful conduct. The Third Circuit, as well as the District Court of New Jersey, have assessed cases similar to the one at bar and found that the second and fourth prong were met and that the doctrine barred jurisdiction. *See, e.g., Gage v. Wells Fargo Bank*, NA AS, 521 F. App'x 49, 51 (3d Cir. 2013); *Perez v. Seterus, Inc.*, 2017 U.S. Dist. LEXIS 190217, *6 (D.N.J. Nov. 16, 2017). In *Perez*, Plaintiffs brought a claim in Federal Court after they failed to respond and subsequently were issued a judgment of foreclosure in state court. *Perez*, 2017 U.S. Dist. LEXIS 190217, *2. Following the holding in *Gage*, the Court in *Perez* found that "[a]djudicating Plaintiffs' claims would require this Court to impermissibly engage in appellate review of the foreclosure action." *Id.* at *8. In *Gage*, the Third Circuit held that "[Plaintiff] cannot evade *Rooker-Feldman* by arguing on appeal that he was not injured by the foreclosure judgment, but rather by Wells Fargo's purportedly fraudulent actions. The Complaint reveals the nature of [Plaintiff]'s claim . . ." The same principles as stated above apply to the facts of this case.

In this case, the issues and claims raised in COUNTS I - III are nearly the same as some of the issues decided by the state court in the motion to set aside the judgment (see page 5). Count I raises a violation of RESPA with regards to Plaintiffs' loan modification request. The claim is based on Plaintiff's submission of a loan modification application to Defendant. Under RESPA, a mortgage loan servicer who receives a qualified written request for a loan modification is obligated to assess and respond to the loan modification request. 12 C.F.R 1024.35. Plaintiff alleges defendant violated RESPA by failing to respond to Plaintiff's application. This is the same relief that was requested and denied in state court.

In Count II, Plaintiff seeks monetary damages equal to the value of the real property because the real estate was sold in violation of Regulation X of RESPA. In the state court, the property was sold to a third party at a sheriff's sale which plaintiff alleges was improper because the loan modification application was pending, and this should stay the sale. Since the property cannot be reclaimed, Plaintiffs seek damages instead. It is the same underlying issue based on an alleged violation of RESPA.

"The general rule regarding simultaneous litigation of similar issues in both state and federal courts is that both actions may proceed until one has come to judgment, at which point that judgment may create a res judicata or collateral estoppel effect on the other action." *Univ. of Md. at Balt. v. Peat Marwick Main & Co.*, 923 F.2d 265, 275–76 (3d Cir.1991*). See Perelman v. Perelman*, 688 F. Supp. 2d 367, 373 (E.D. Pa. 2010). Plaintiffs filed a complaint with this Court on November 13, 2016. They filed a motion to set aside, raising a RESPA argument in state court on January 4, 2017, thus effectively creating simultaneous litigation of similar issues. The State court rendered a decision on the motion on January 20, 2017, before this Court reviewed the merits

of the claims raised in the Complaint. The state court decision created a res judicata effect which now bars this Court's decision on the matter.

The claims are also barred by the *Rooker-Feldman* Doctrine because a decision by this Court would require a review of the state court's decision.

Count III alleges Wells Fargo's unjust enrichment. Decision on this claim would require the count to determine whether the foreclosure judgment was invalid. As such, it requests this court to review a state court decision, and is barred by the *Rooker-Feldman* doctrine.

Plaintiffs argue that *Rooker-Feldman* does not apply to this matter pursuant to the decision in *Puche v. Wells Fargo NA*, 256 F. Supp. 3d 540, (D.N.J. 2017). *Puche* is distinguishable. In *Puche*, the claims raised by Plaintiffs had not been addressed during the state court litigation as they were based upon conduct that took place after the judgment of foreclosure was issued. *Id* at 545.

Count VIII alleges Wells Fargo violation of the New Jersey Consumer Fraud Act. To state a claim for a violation under the NJCFA, a plaintiff must allege: "(1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendant's unlawful conduct and the plaintiff's ascertainable loss." *Dabush v. Mercedes-Benz USA, LLC*, 874 A.2d 1110, 1115 (N.J. Super. App. Div. 2005).

Plaintiffs allege the following instances in which Defendant violated the NJCFA:

Fraudulently representing that the Plaintiffs' loan modification would be given fair, due and appropriate evaluation as required by the law, knowing at all times that Defendants had no intention of doing so- all of which was in violation of 12 U.S.C. [] 2601 et seq. implemented by Regulation Z. . . .

Fraudulently representing that Plaintiffs' loan modification would be given fair, due and appropriate evaluation as required by law, knowing at all times that Defendants had no authority and standing to do so. . .

> Failing to inform the Plaintiffs and the Court that the Defendants had divested themselves of the Note and Mortgage and therefore had no authority or standing to proceed with a foreclosure, Sheriff Sale, all in an attempt to unlawfully take and convert Plaintiffs' property.

(Amend. Compl. 3 pg. 21).

From the pleading, Plaintiffs are seeking here that the Court reject the state court judgment and enter new relief. To do so would undermine the state court process. As such, this relief is barred by the *Rooker-Feldman* doctrine.

A decision by this Count, like the above-mentioned, would require review of the foreclosure proceedings. Further, the claim is barred by the entire controversy doctrine because it is germane to the mortgage for which the foreclosure action has been filed.

Plaintiffs raise a claims for breach of contract (Count IX) against Wells Fargo, alleging "the contractual terms of the loan/note by engaging in deceptive and fraudulent practices." To establish a breach of contract claim, a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result. *Murphy v. Implicito*, 920 A.2d 678, 689 (N.J. Super. App. Div. 2007).

As this Court held in *Ogbebor v. J.P. Morgan Chase*, N.A., "while Plaintiff characterized their harm as relating to Defendant's conduct, the breach of contract claim implicitly challenges the validity of the mortgage and Defendant's right to foreclose, and thus seeks to attack the state court foreclosure judgment." (*Perez*, 2017 U.S. Dist. LEXIS 190217, at *8-9 (citing to *Ogbebor v. J.P. Morgan Chase*, N.A., 2017 U.S. Dist. LEXIS 14790, at *30 (D.N.J. Feb. 2, 2017).

Like in *Gage*, Plaintiffs are denouncing Wells Fargo's fraudulent and deceptive actions which led to the unfair enforcement of the foreclosure judgment. Any findings in favor of Plaintiff,

for the claims raised before this Court, would necessarily result in a review of the foreclosure judgment. The Count is therefore barred by the Rooker-Feldman Doctrine.

**Failure to State a Claim: Rule 12(b)(6) Standard**

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal*, 556 U.S. at 678-79; *see also Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997). A complaint should be dismissed only if the well-pleaded alleged facts, taken as true, fail to state a claim. *See In re Warfarin Sodium*, 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir.), *cert. denied, Forbes v. Semerenko*, 531 U.S. 1149, 121 S. Ct. 1091 (2001). "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" *Kost v. Kozakewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357 at 340). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to

provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, . . . . Factual allegations must be enough to raise a right to relief above the speculative level , . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact). *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65 (internal citations and quotations omitted).

## COUNT VI (FCRA)

In the Amended Complaint, Plaintiffs raise a claim for violations of the Federal Credit Reporting Act 15 U.S.C. 1681-2(a) (FCRA). The statute requires entities that furnish data to consumer reporting agencies to provide accurate information, there is no private right of action for consumers to enforce this duty against furnishers of information. *See Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 34 (3d Cir. 2011). Thus Plaintiffs cannot pursue a claim under 1681s-2(a).

> Section 1681s–2(b) applies to a data furnisher's actions after being placed on notice by a consumer rating agency of a dispute and the existence of an informational error is confirmed. Section 1681s–2(b) is triggered only after a consumer notifies the consumer credit agency of a dispute. The consumer credit agency will then notify the data furnisher of the disputed information within five business days from the time the agency was notified by the consumer. Section 1681s–2(b)(1) provides specific guidelines for how the data furnisher may conduct the subsequent investigation into remedying the situation...

*Edwards v. Equable Ascent, FNCL, LLC*, No. 11-CV-2638 CCC, 2012 WL 1340123, at *5 (D.N.J. Apr. 16, 2012). Here, Plaintiff alleges, though vaguely, that Defendant Wells Fargo reported false and derogatory information "to a number of credit reporting agencies regarding Plaintiffs' account." "Plaintiffs contacted Defendants on a number of occasions to dispute any derogatory information that was reported." (Amend. Compl., ¶¶4-5 pg. 17). Plaintiff alleges violations of sections §1681n and §1681o of the FCRA. (Id., ¶7). However, the sections cited define, respectively, civil liability for willful noncompliance and civil liability for negligent noncompliance for violations of 15 U.S.C. §1681 et seq.

It is unclear whether the alleged reporting occurred before or after the foreclosure action. If it happened before then the claim would have been ripe at the time of the state action, thus would be barred by the entire controversy doctrine, unless Plaintiffs can show a reason why this claim could not have been brought at the time.

Further, even if the claim is not barred by the entire controversy doctrine, Plaintiffs do not allege that (a) they sent notice of dispute to the consumer reporting agencies, (b) that the consumer reporting agencies notified Wells Fargo of the dispute, or (c) that Wells Fargo failed to follow the required investigation procedure to verify the inaccuracy of the information. As pled, Count VI fails to state a claim. Fed. R. Civ. P. 8(a). Thus, this count is dismissed.

In Count VII, Plaintiffs claim that Wells Fargo defamed them. Plaintiffs allege that "Defendants [have] published statements both orally and in writing to various credit reporting agencies, collection agencies, and/or attorneys that were false and negatively portrayed Plaintiff's credit information and history in a false and untrue manner. The claim is connected to Plaintiff's FCRA claim. The Complaint does not set forth the specific nature of the false statement or when or by whom the statements were made.

Defendant argues that this claim is barred by the litigation privilege. They allege, "[a]t all times relevant herein, Defendant[] has published statements both orally and through writing to various credit reporting agencies, collection agencies, and/or attorneys that are false and negative representations concerning Plaintiffs' credit information and history."(Amend. Compl. ¶2 pg. 19).

The litigation privilege insures that "'statements by attorneys, parties and their representatives made in the course of judicial or quasi-judicial proceedings are absolutely privileged and immune from liability." *Peterson v. Ballard*, 292 N.J.Super. 575, 679 A.2d 657, 659 (N.J.Super.Ct.App.Div.1996) (citing *Erickson v. Marsh & McLennan Co., Inc.*, 117 N.J. 539,

569 A.2d 793 (1990)). The privilege is expansive. New Jersey courts "have extended the reach of the litigation privilege even to statements made by attorneys outside the courtroom, such as in attorney interviews and settlement negotiations." *Loigman v. Twp. Comm. of Twp. of Middletown*, 185 N.J. 566, 889 A.2d 426, 438 (2006). Whether the privilege applies is a question of law. *Peterson*, 679 A.2d at 664. The privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. See *Rickenbach v. Wells Fargo Bank*, N.A. 635 F. Supp. 2d 389 (D.N.J. 2009). To make such a determination, the court needs more facts.

Defendant supports that the privilege applies to this matter because the defamation claim against Wells Fargo is based entirely on what transpired in the Foreclosure Action. The statements referred to in the Defamation claim appear to be connected to those mentioned in the FCRA claim. Here too the timing is unclear. Even if the claim is not barred by the Rooker-Feldman Doctrine, this count would still be dismissed for failure to state a claim.

## CONCLUSION

As in *Gage*, here too, the Complaint reveals the true nature of Plaintiffs' claims. Although Plaintiffs are demanding damages, not the reversal of the foreclosure, they are effectively seeking invalidation of the decision of the state court and expressing dissatisfaction with the foreclosure on their property. Unfortunately, it is not the role of this Court to serve as a court of Appeal to the decisions of the State Court. If Plaintiffs were displeased with the decision of the state court, they should have appealed to the Appellate Division in the Superior Court of New Jersey.

After dismissing all claims against Wells Fargo, this Court is left with two state law claims, Count IV and Count V. Count IV alleges unjust enrichment against Defendants Kevin Quinn and

Claremont Funding Loan Modification Services A/K/A Templeton Firm. Count V alleges fraud by Defendant Strategic Equity Solutions. Both are state law claims. Plaintiffs filed this matter in federal court based on federal question jurisdiction. There is no diversity among the Plaintiff and Defendant Strategic Equity Solutions, therefore Count V is dismissed.

Count IV is brought against Defendants Kevin Quinn, a citizen of New York and Claremont Funding Loan Modification Services A/K/A Templeton Firm ("Templeton"), a New York company. While there could be diversity jurisdiction with regards to that Count, Quinn and Templeton were never properly served. [See ECF No 7, "Affidavit of Non Service"]. It is still unclear to this Court whether Defendant Quinn is currently incarcerated. The Court will allow Plaintiff 60 days from the date of this Order to properly serve Defendant Quinn and Templeton. Should they fail to do so, Count IV will also be dismissed.

Plaintiffs had two opportunities to set forth their claims. Based upon the above reasoning, additional amendments would be futile. This matter is therefore dismissed with prejudice.

ORDER

This matter having come before the Court on a motion to dismiss Plaintiff's first amended complaint, brought by Defendant Wells Fargo [ECF No. 14]; and the Court having considered the briefs and oral arguments of the parties; and for good cause having been shown;

IT IS on this 10th day of April, 2018;

**ORDERED** that Defendant's motion to dismiss [ECF No. 14] is GRANTED; and it is further,

**ORDERED** that Counts I, II, III, VI, VII, VIII, IX are dismissed pursuant to Fed. R. Civ. P. 12(b)(1); and it is further,

**ORDERED** that Count V is dismissed for lack of subject matter jurisdiction; and it is;

**ORDERED** that Plaintiffs shall attempt serving again Defendants Kevin Quinn and Claremont Funding Loan Modification Services A/K/A Templeton Firm within 60 days from the date of this order, should they fail to do so, Count IV and this matter will be dismissed; and it is further,

**ORDERED** Defendant's motion to dismiss [ECF No. 11] is denied as moot.

*[signature]*
PETER G. SHERIDAN, U.S.D.J.